# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES CURTIS,

                Plaintiff,

v.

BOB CONSTANTINE, OFFICER DEFATTE, OFFICER KAMPHIUS, OFFICER HOLLAND, HSM GUGLER, AHSM HOLLANDER, DANIEL M. CROMWELL, WARDEN FSA HEREFORD, and WISCONSIN DEPARTMENT OF CORRECTIONS,

                Defendants.

Case No. 25-CV-238-JPS

**ORDER**

      Plaintiff James Curtis, an inmate confined at the Drug Abuse Correctional Center, filed a pro se complaint under 42 U.S.C. § 1983 alleging that his constitutional rights were violated. ECF No. 1. On April 1, 2025, Plaintiff filed an amended complaint. ECF No. 12. On April 21, 2025, Plaintiff paid the filing fee in full. As such, the Court will deny as moot Plaintiff's motion to proceed without prepayment of the filing fee. ECF No. 7. On May 5, 2025, Plaintiff filed a motion for reconsideration of the amended complaint. ECF No. 15. The Court has yet to consider Plaintiff's amended complaint; thus, the Court will deny this motion as premature. The remainder of this Order screens Plaintiff's amended complaint.

1.     **FEDERAL SCREENING STANDARD**

      Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff brings his amended complaint against Defendants Bob Constantine ("Constantine"), Officer Defatte ("Defatte"), Officer Kamphuis ("Kamphius"), Officer Holland ("Holland"), HSM Gugler ("Gugler"), AHSM Hollander, Daniel M. Cromwell, Warden ("Cromwell"), FSA Hereford ("Hereford"), and Wisconsin Department of Corrections ("DOC"). ECF No. 12. at 1–2. On October 25, 2024, Plaintiff was transferred to Dodge Correctional Institution ("DCI"), and he requested a Halal diet through the chaplain. *Id.* at 4. Constantine, the food service manager, approved the request on October 29, 2024. *Id.* During the next four months, Plaintiff received dirty food trays with a brown film coving them. *Id.* Plaintiff showed the dirty food trays to the unit correctional officers during this time. *Id.* Plaintiff believes the trays were served with inedible and sour leftovers. *Id.* The correctional officers sent the trays back to the kitchen, but Plaintiff was not always guaranteed to receive another Halal tray. *Id.*

Specifically, on December 10, 2024, Plaintiff received another dirty food tray. *Id.* The unit supervisor contacted the kitchen staff, and Plaintiff filed a grievance about the incident. *Id.* at 5. Kolb, the complaint examiner, sent the complaint back as not accepted because Plaintiff did not attempt to contact Constantine. *Id.* Plaintiff attempted to contact Constantine numerous times, but he never received a response. *Id.* Kolb did not accept Plaintiff's grievance because he falsely claimed Plaintiff had not attempted to resolve it. *Id.* Constantine continued to provide Plaintiff with unsafe food. *Id.*

On December 30, 2024, Plaintiff received another dirty tray with old food covered in a brown film. *Id.* at 5–6. Plaintiff ate some of the food and it was sour. *Id.* at 6. The beans were old and the corn was brownish yellow,

dried, and shrunk. *Id.* Plaintiff showed the tray to Kamphius. *Id.* Kamphius took the tray to his desk, but he never got Plaintiff another diet tray. *Id.* Approximately one hour later, Plaintiff began to feel nauseated. *Id.* Plaintiff told Kamphius that he needed to go to HSU, but Kamphius ignored him. *Id.* The following day at approximate 4:00 a.m., Plaintiff began vomiting and had extreme diarrhea. *Id.* Plaintiff did not eat breakfast because he was sick. *Id.* At approximately 9:00 a.m., Plaintiff told Officer Docta that he ate bad food from a dirty tray and that he was very sick. *Id.* Docta told Plaintiff to put in a medical request and to let her know if he got another dirty tray. *Id.* Plaintiff put in a medical request to let HSU know that he was vomiting with stomach pain and having diarrhea. *Id.* Plaintiff's symptoms continued throughout the day. *Id.* At dinner, Plaintiff attempted to eat his food, but he was only able to eat about one third of the food. *Id.* Plaintiff's symptoms continued. *Id.*

On January 1, 2025, at approximately 5:00 a.m., Plaintiff began vomiting again and his stomach pain and diarrhea continued. *Id.* At approximately 5:30 a.m., Paulsen came to Plaintiff's cell, and he told Paulson about his illness. *Id.* Paulsen suggested that Plaintiff wait until the 6:00 a.m. shift. *Id.* At 6:05 a.m., Plaintiff's cellmate attempted to get Defatte's attention. *Id.* At 6:15 a.m., Defatte came to Plaintiff's cell for count. *Id.* Plaintiff told Defatte that he was vomiting, had extreme diarrhea, and excruciating stomach pain. *Id.* Defatte walked away to continue the count and laughed at Plaintiff with another female officer. *Id.* Defatte came by again and Plaintiff told Defatte that he needed to go to HSU because his condition was very bad. *Id.* Defatte continued to pass out breakfast and Plaintiff did not eat because of his condition. *Id.* at 7. Plaintiff again told Defatte his symptoms and asked for medical help. *Id.* Defatte told Plaintiff,

"If you are talking and breathing it's not an emergency." *Id.* Plaintiff was on the floor begging for help. *Id.* Defatte came back asking if Plaintiff was okay three more times and Plaintiff replied he was not and kept asking for help. *Id.* At around 11:00 a.m., Defatte came back to tell Plaintiff that HSU had found his medical request and that he would be seen the following day. *Id.* In the meantime, Defatte told Plaintiff that he should drink plenty of water to stay hydrated and to get rest. *Id.* Plaintiff replied that he was having a medical emergency and needed immediate treatment. *Id.* Defatte ignored Plaintiff's request. *Id.* Peters had notice of Plaintiff's request and continued to delay Plaintiff's medical treatment. *Id.* Peters knew of Plaintiff's symptoms but refused to help him. *Id.*

The following morning, at approximately 7:30 a.m., Plaintiff asked Holland to call HSU for his visit because his condition was very bad. *Id.* Holland came back about one hour later and told Plaintiff he was not on the paper list for HSU. *Id.* Holland called HSU but told Plaintiff that no one answered. *Id.* Plaintiff asked Holland to call HSU again, but Holland refused. *Id.* Holland told Plaintiff to wait an hour even though Plaintiff had told Holland his symptoms. *Id.* Holland came back at 1:05 p.m. and told Plaintiff he was on the list and HSU would call when they were ready. *Id.* at 8. Plaintiff told Holland he needed to be seen immediately because he was in excruciating pain. *Id.* At 2:00 p.m., Plaintiff asked Kamphius to call HSU because of his excruciating pain and dry heaving. *Id.* Kamphius ignored Plaintiff. *Id.*

At approximately 2:45 p.m., Plaintiff was called to HSU. *Id.* RN K. Pench told Plaintiff that he should have been seen right away because of his condition. *Id.* Pench performed various tests on Plaintiff and determined that Plaintiff needed to immediately go to the emergency room for

treatment. *Id.* Plaintiff was at the emergency room for five hours and was released with instructions to have a soft and gentle diet. *Id.*

Plaintiff alleges that the HSU staff have a widespread practice that is permanently enforced to deny inmates immediate medical care for emergencies. *Id.* HSU Manager Gugler and the Assistant Manager Hollander knew or should have known that these customs and practices prevent inmates from receiving immediate medical care. *Id.* at 9.

On January 3, 2025, Plaintiff received another food tray with old rice. *Id.* Plaintiff showed the tray to Defatte who took the tray back to the kitchen. *Id.* Plaintiff did not receive another tray. *Id.* At approximately 11:50 a.m., Plaintiff was called to HSU for a follow-up visit. *Id.* Kuffenkam spoke with Plaintiff for about only two minutes. *Id.* Kuffenkam had Plaintiff's medication list, said a few things, and rushed Plaintiff out before count. *Id.* Kuffenkam prescribed a clear diet that consisted of saturated salt and sugar. *Id.* Kuffenkam knew that this diet went against his instructions from the emergency room and that it could elevate his health conditions. *Id.* Kuffenkam's treatment of Plaintiff for only two minutes was blatantly inappropriate. *Id.* at 10.

Later that day, Plaintiff file a grievance regarding these incidents. *Id.* Kolb sent the grievances back and stated Plaintiff needed to contact Constantine. *Id.* However, Constantine refused to respond to Plaintiff's requests. *Id.* Kolb intentionally refused to address the grievance. *Id.* On January 16, 2025, Plaintiff sent the grievance back to Kolb because Constantine never responded. *Id.*

On January 25, 2025, Plaintiff received another dirty food tray at lunch. *Id.* Plaintiff showed the tray to Garcia and Gallagher, who replied that the tray was disgusting. *Id.* They sent the tray back to the kitchen, but

Plaintiff was only given a cold bag lunch instead of his Halal diet. *Id.* Plaintiff filed a grievance about this incident. *Id.* On January 27, 2025, Plaintiff received another dirty food tray. *Id.* at 11. Plaintiff showed the tray to Bollinger and Garcia. *Id.* Plaintiff decided to not eat breakfast because nothing is ever done about the dirty food trays. *Id.* Plaintiff filed a grievance and wrote to Warden Cromwell and DOC Secretary Jared Hoy. *Id.* On January 28, 2025, Kolb returned Plaintiff's complaint and alleged that Plaintiff failed to cooperate with directives. *Id.* On January 29, 2025, Plaintiff replied to Kolb. *Id.* Instead of responding in writing, Kolb came to see Plaintiff on February 4, 2025. Kolb admitted to Plaintiff he had made a mistake and that he was confused about the letters. *Id.* Kolb told Plaintiff, however, that he could no longer process the grievances because they were past the ten-day deadline. *Id.* Plaintiff told Kolb that the grievances should be accepted because they were timely submitted. *Id.* Kold told Plaintiff that he could file another grievance if he got another dirty tray. *Id.* at 12. Plaintiff believes Kolb was trying to prevent him from exhausting his administrative remedies because Plaintiff was about to transfer to another facility. *Id.* On January 30, 2025, Plaintiff wrote the Corrections Complaint Examiner, Greenwood, about Kolb's refusal to process the grievance. *Id.*

On February 5, 2025, Plaintiff received another dirty food tray. *Id.* As a result, Plaintiff refused the special Halal diet trays from February 5, 2025 through February 11, 2025, and Plaintiff only picked at trays for another seven days in February. *Id.* On February 5, 2025, Plaintiff informed the Health Services Unit ("HSU") that he would not be eating from any dirty trays and that he was not on a hunger strike. *Id.* The only food Plaintiff ate was food from packages and fresh fruit. *Id.* On February 6, 2025, a food log monitor was placed on Plaintiff's door. *Id.* On February 7, 2025, Plaintiff

saw the Psychological Service Unit ("PSU") and explained again that he was not on a hunger strike and was only refusing dirty food. *Id.* Plaintiff maintains that serving the Halal diet on dirty trays violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and also caused an immediate danger to Plaintiff's health and well-being. *Id.* Plaintiff did not want to end up in the emergency room again because of food poisoning from dirty food trays. *Id.* Plaintiff wrote to Crowell again on February 7, 2025, to explain the issue. *Id.*

On February 10, 2025, Plaintiff received yet another dirty food tray. *Id.* Plaintiff wiped the dirty tray with tissue paper and showed it to Schuett. *Id.* Schuette told Plaintiff that she was already aware that the food trays were dirty because she had previously been a food service official. *Id.* at 13. Schuette admitted that food was served on dirty trays there were too many trays to scrub them all clean. *Id.* Schuette told Plaintiff there was nothing that she could do to help, and that Plaintiff should keep on filing grievances. *Id.*

Cromwell responded on behalf of Secretary Hoy. *Id.* Cromell did not respond to any of Plaintiff's issues. *Id.* Plaintiff wrote back to Cromwell to inform him that Plaintiff's issues had not been resolved. *Id.* Cromwell did not respond again, nor did he intervene to resolve the dirty food tray issue. *Id.*

On February 17, 2025, Nurse Busse came to Plaintiff's cell and took the food log monitor. *Id.* Busse ordered Plaintiff to be sent to overflow segregation for refusing to eat from the dirty food trays even though the log monitor showed Plaintiff was eating some meals. *Id.* Plaintiff was not on observation watch so he would flush food from a dirty tray into the toilet to make it look like Plaintiff ate the food. *Id.* Plaintiff did this action so that

Page 8 of 17
Case 2:25-cv-00238-JPS      Filed 05/30/25      Page 8 of 17      Document 16

he could be released from segregation. *Id.* Plaintiff experienced difficulties with Kolb accepting his grievances related to these events. *Id.* at 13–14.

Plaintiff continued to tell HSU that he was not on a hunger strike. *Id.* at 14. On February 18, 20215, PSU came to check on Plaintiff about the alleged hunger strike. *Id.* PSU told Plaintiff they understood Plaintiff was not on a hunger strike but that they were just following procedure. *Id.* On March 7, 2025, Cromwell dismissed Plaintiff's grievance appeal. *Id.*

3.   **ANALYSIS**

The Court finds that Plaintiff may proceed on an Eighth Amendment conditions of confinement claim against Defendants Constantine, Defatte, Kamphius, Cromwell, and Hereford. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11,

2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

Depending on the "amount and duration of the deprivation," denying a prisoner adequate nutrition can violate the prisoner's Eighth Amendment rights. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). Courts have found that instances of more "minor" deprivations did not meet the "objective seriousness" prong. *See Dickerson v. Milwaukee County*, No. 23-CV-1442-BHL, 2024 WL 233376 (E.D. Wis. Jan. 22, 2024) (holding that two consecutive missed meals did not "rise to the level of a constitutional violation"); *Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542 (E.D. Wis. Jan. 5, 2021) (holding that "a slice of meat, bread, and a handful of chips at meal time, along with two peanut butter and two jelly squeeze packs with four pieces of bread at breakfast" was not inadequate even if the plaintiff wanted more to eat); *see also Freeman v. Berge*, 441 F.3d 543 (7th Cir. 2006) (holding that withholding sporadic meals over two and a half years due to the inmate's refusal to follow health and safety policy conditions to receiving meals was not a cruel and unusual punishment because it was both self-inflicted and there is no evidence of "real suffering, extreme discomfort, or any lasting detrimental health consequences").

Here, Plaintiff's amended complaint alleges that he received dirty food trays for a period of months. Plaintiff alleges that the food was old and generally inedible. The food trays contained a brown film on them and caused Plaintiff to become ill and go to the hospital for treatment as a result. Plaintiff further alleges that he informed Defendants of the condition of the food trays, and they did little to resolve the issue. At the pleading stage, Plaintiff's allegations are sufficient to proceed on an Eighth Amendment conditions of confinement claim against Constantine, Defatte, Kamphius,

Cromwell, and Hereford for denying him access to edible food over a period of months.

Second, the Court finds that Plaintiff may proceed against Defatte, Kamphius, Holland, Gugler, and Hollander on an Eighth Amendment deliberate indifference claim for their indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). Deliberate indifference requires "[s]omething more than negligence or even malpractice." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Defatte, Kamphius, Holland, Gugler, and Hollander. Plaintiff alleges that he informed Defendants of his need for emergency medical treatment, and they ignored him. Plaintiff further alleges that he was eventually seen at the emergency room for his issue and medical staff told him that he should have been seen right away. At the pleading stage, the Court finds that Plaintiff may proceed against Defatte, Kamphius, Holland, Gugler, and Hollander on an Eighth Amendment

deliberate indifference claim for their indifference to Plaintiff's serious medical needs.

Third, Plaintiff may proceed against Constantine, Defatte, Kamphius, Cromwell, and Hereford for a First Amendment Free Exercise Clause claim. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Incarcerated persons "clearly retain protections afforded by the First Amendment," including a limited right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted); *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002). To proceed under the Free Exercise Clause, the plaintiff must show that prison officials "intentionally and substantially interfere[d] with [his] ability to practice his faith" and that the prison's restriction was not "reasonably related to a legitimate penological interest." *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Seventh Circuit has held that intentionally forcing an incarcerated person "to choose between foregoing adequate nutrition or violating a central tenant of his religion" creates a substantial burden on that inmate's free exercise of his religion. *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016).

Here, Plaintiff alleges that he was granted Halal food trays for religious reasons and that these defendants prevented him from receiving edible trays for a period of months. At the early pleading stage, the Court will allow Plaintiff to proceed on a First Amendment free exercise claim against Constantine, Defatte, Kamphius, Cromwell, and Hereford.

Fourth, Plaintiff may not proceed on a Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, claim.

RLUIPA "provides that a federally funded prison may not 'impose a substantial burden on the religious exercise' of an inmate unless it can prove that doing so is the least restrictive means of furthering [a] compelling governmental interest.'" *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citing 42 U.S.C. § 2000cc-1(a)). An incarcerated person whose religious exercise has been burdened in violation of RLUIPA "may sue for injunctive or declaratory relief." *Id.* (citing *Charles v. Berhagen*, 348 F.3d 601, 606 (7th Cir. 2003)). Thus, a claim under RLUIPA becomes moot when a realistic possibility of future violations no longer remains. *Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011). A transfer from the complained-about prison generally moots equitable and declaratory claims. *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (citing *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991)). Further, the Prison Litigation Reform Act applies to claims under RLUIPA. 42 U.S.C. § 2000cc-2(e). Therefore, prospective relief for unconstitutional prison conditions must be narrow, extending no further than necessary to correct the violation. *See* 18 U.S.C. § 3626(a)(1)(A); *Rasho v. Jeffreys*, 22 F.4th 703, 711 (7th Cir. 2022).

Here, Plaintiff is no longer incarcerated at DCI. Nothing in the complaint suggests that he has experienced issues with Halal food trays at any other institutions. As such, the Court finds that Plaintiff's RLUIPA claim is moot and Plaintiff may not proceed on this claim.

Finally, Plaintiff may not proceed against Defendant DOC for the First and Eighth Amendment claims. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." *Johnson v. Supreme Court of Ill.*, 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." *Andreola v. Wisconsin*, 171 F. App'x 514, 515 (7th Cir. 2006). As

such, the Court will dismiss DOC from this action for the failure to state a claim against it.

## 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment conditions of confinement claim against Defendants Constantine, Defatte, Kamphius, Cromwell, and Hereford.

**Claim Two:** Eighth Amendment claim against Defendants Defatte, Kamphius, Holland, Gugler, and Hollander for their deliberate indifference to Plaintiff's serious medical needs.

**Claim Three:** First Amendment free exercise claim against Defendants Constantine, Defatte, Kamphius, Cromwell, and Hereford.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order after counsel is secured that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 7, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to reconsider the amended complaint, ECF No. 15, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant DOC be and the same is hereby **DISMISSED** from this action;

**IT IS ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended

complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Constantine, Defatte, Kamphius, Holland, Gugler, Cromwell, Hollander, and Hereford**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any

argument against dismissal and face dismissal of this matter with prejudice; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202
>
> **DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.
>
> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.